## Commonwealth v. Wise Foods

*John P. Krill, Jr., Assistant Attorney General,* for Commonwealth.

*Joseph J. Savitz,* of *Rosenn, Jenkins & Greenwald,* for defendant.

MYERS, *P.J.,* November 28, 1978—On July 21, 1975, the Pennsylvania Department of Environmental Resources (hereafter called DER) filed a criminal complaint against Wise Foods, Division of Borden Foods, Borden, Inc. (hereafter called Wise).

The complaint charges Wise with a violation of section 8 of the Air Pollution Control Act of January 8, 1960, P.L. (1959) 2119, as amended, 35 P.S. §4008. Specifically, the complaint alleges that Wise "did cause, suffer, or permit the emission into the outdoor atmosphere of malodorous air contaminants from the company's potato storage facility. . . ."

Wise was found guilty by a district justice, and was fined $500 plus costs. Wise then filed an appeal

from the decision of the district justice, and a de novo hearing was held before us. The matter is now ready for disposition.

The odor in question is basically caused by the natural process of potato rot, and is emitted from various storage facilities located on the premises of the Wise Foods potato chip plant located in Berwick, Columbia County, Pa. Wise operates these storage facilities in order to insure that there are always sufficient potatoes available to conduct the business.

Wise purchases potatoes from areas located throughout the eastern half of the United States. Because of the variables in potato growing seasons, and because of Wise's enormous need for potatoes, storage facilities are essential to keep the plant fully supplied at all times.

Wise utilizes a variety of techniques designed to prevent the stored potatoes from spoiling. Sprays, temperature controls, and certain other means are employed to retard potato deterioration. Occasionally, however spoilage nonetheless occurs.

On the date specified in the instant complaint, Wise was in the process of removing rotten potatoes in trucks from the storage facilities. In the removal process, the odor of rotten potatoes permeated the neighborhood.

DER concedes that the potato odors are not toxic, and that they do not in any way pose a health hazard.

However, DER contends that the potato smell is a malodor, and that the emission of this malodor constitutes a violation of DER's regulations.

Wise presented two defenses. First, Wise contends that the definition of malodor, as set forth at

25 Pa. Code §121.1, is impermissibly vague, and hence unconstitutional. Second, Wise points out that it is already doing everything possible to control the odors, and that the only means of eliminating the odors entirely is to close the plant, with the resultant economic impact upon the business and the community.

DER contends that "impossibility" is not a valid defense in a criminal action. We disagree. Further, we conclude that Wise has in fact presented a meritorious defense, and that Wise should be acquitted, on the grounds of impossibility of performance.

In Com. v. Pennsylvania Power Co., 12 Pa. Commonwealth Ct. 212, 316 A. 2d 96 (1974), DER sought a contempt order against an electric utility which had refused to install sulfur dioxide scrubbing devices. Commonwealth Court rejected the contempt petition, after finding that it was impossible for the utility to control its emissions by installing the scrubbers.

DER maintains that Pennsylvania Power Co. is inapplicable to the instant case, since DER is not attempting to compel Wise to install any particular type of equipment. In our view, however, the "impossibility" principles set forth in Pennsylvania Power Co. are equally applicable to a criminal proceeding brought under 35 P.S. §4008.

Wise presented credible testimony showing that it was doing everything possible to retard the natural process of potato rot, which is the source of the odor in question. Credible testimony also demonstrated that there is no known method of *preventing* natural potato rot, given the present state of technology. Admittedly, there are a number of ways of *retarding* the rotting process, but according to

the evidence, all of these methods are already employed at the Wise plant.

Further credible evidence demonstrated that the odor can be detected off the premises of the Wise plant primarily when Wise is in the process of removing the rotten potatoes from the storage bins and hauling them away in trucks. The removal process diffuses the odor and makes it detectable off the premises.

DER contended that Wise cares ". . . more about squeezing the last possible dollar from its rotting potato piles than it cares about the welfare of its neighbors." According to DER, Wise could eliminate the odor merely by disposing of its rotten potatoes. However, testimony produced at the hearing indicated that Wise does dispose of the rotten potatoes, and that the removal process itself is the primary source of the offensive odors.

One of DER's witnesses also testified that Wise could eliminate the odors by using carbon absorption, incineration, or scrubbers. However, the witness conceded that he did not know of any potato processing plant where this type of "exotic technology" had been utilized. Further, the DER witness admitted that he had virtually no knowledge as to whether any of these technologies would actually eliminate odors in a potato chip manufacturing plant.

Wise's expert witness—a professor at Pennsylvania State University—testified that Wise is doing everything possible to retard rot. He stated that Wise has funded considerable expensive research in this field, and that the engineering systems proposed by DER simply would not work. We found the testimony of the Wise expert to be credible and convincing, and we conclude that there is in fact no

way, given the present state of technology, that Wise could eliminate the potato rot odor, other than by closing its plant.

If this action had been brought in equity, no doubt we would have directed Wise to commission an independent study, to be approved by the court, seeking solutions to this odor problem. We also would have directed Wise to continue to reasonably fund further research in this field.

However, since DER chose to commence a criminal action, our alternatives are limited to finding defendant Wise either guilty or not guilty. Based on the evidence, we find Wise not guilty, on the grounds that it is presently impossible for Wise to comply with DER's regulations.

At the same time, it should be noted that due to our nation's abundant intellectual and material resources, modern technology remains in a constant state of flux. What is impossible today may very well be possible tomorrow.

Accordingly, while we have acquitted defendant in this case, the result could be different in the future, if defendant should fail to continue to exercise every reasonable known precaution to eliminate the odor in question.

We suggest, therefore, that Wise redouble its efforts to find a practical solution to these problems. We also encourage Wise to cooperate with its neighbors in an attempt to minimize the impact of the odors.

Since we have found Wise not guilty, we need not address the Constitutional issues involved in this case.

## ORDER

And now, November 28, 1978, after hearing held, we adjudge defendant not guilty.